# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| JUDITH A. KUBSCH, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.:2:10-CV-495-JTM |
| | ) | |
| INDIANA STATE POLICE, | ) | |
|     Defendant. | ) | |

## FINDINGS, REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE PURSUANT TO
## 28 U.S.C. § 636(b)(1)(B) & (C)

This matter is before the Court on a Motion for Summary Judgment [DE 38], filed by Defendant Indiana State Police on February 15, 2013.

On May 19, 2014, Judge James T. Moody entered an Order [DE 36] referring this matter to the undersigned Magistrate Judge for a report and recommendation on the instant Motion pursuant to 28 U.S.C. § 636(b)(1)(B). This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).

## PROCEDURAL BACKGROUND

On September 22, 2009, Plaintiff filed a Charge of Discrimination against her employer, the Indiana State Police (ISP), with the Equal Employment Opportunity Commission (EEOC), alleging discrimination based on sex. She alleged that she had been subjected to a hostile work environment, "workplace harassment, exclusion, intimidation, and unwarranted scrutiny of [her] job performance," including being required to undergo two mental health fitness for duty examinations. Compl. Exh. 1. On September 20, 2010, the EEOC issued a Notice-of-Right to Sue. On December 3, 2010, Plaintiff filed a second Charge with the EEOC alleging retaliation as a result of her filing her first Charge. On December 17, 2010, Plaintiff filed her Complaint in this Court, including

claims for hostile work environment, disparate treatment, and retaliation in violation of Title VII of the Civil Rights Act of 1964. On April 26, 2011, the EEOC, issued a Notice-of-Right to Sue on the second Charge, and on July 15, 2011, Plaintiff filed an Amended Complaint to reflect that fact.

On February 15, 2013, Defendant filed the instant Motion for Summary Judgment, arguing that it is entitled to summary judgment on Plaintiff's intentional discrimination and retaliation claims. On May 13, 2013, Plaintiff filed a response, and on May 30, 2013, Defendant filed a reply. On May 19, 2014, the matter was referred to the undersigned Magistrate Judge.

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Srail v. Vill. of Lisle*,

588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50.

## MATERIAL FACTS

Plaintiff has been employed as a trooper with Defendant ISP since December 20, 1993, except for interruptions for military service, including Plaintiff's 2008 deployment to Iraq as a United States Army Military Police officer. After Plaintiff returned from Iraq, she was required to undergo two mental health fitness for duty evaluations ("FDEs"). The first was ordered by ISP Superintendent Paul Whitesell on March 3, 2009. While the first FDE was pending, Plaintiff was removed from her regular duties and assigned to administrative duties. Reassignment to administrative duties involved the suspension of law enforcement authority with the surrender of badge, identification card, and weapon. The psychologist who performed the first FDE recommended that Plaintiff attend sixteen counseling sessions but that she be allowed to return to her regular duties after completing four of them. Rather than report for administrative duties during the FDE process and mandatory counseling, Plaintiff chose to use some of her accumulated sick days. Plaintiff returned to regular duty on April 7, 2009, after completing four counseling sessions. She completed the last of her required sessions on July 13, 2009. Plaintiff's reassignment to administrative duties pending the first FDE and during her first four counseling sessions did not result in any lost wages. Her only financial loss related to the FDE was the payment of insurance co-pays for the treatment that was mandated by the evaluating psychologist.

On July 10, 2009, Plaintiff was informed that she had been assigned to escort bicyclists on a two-day charity ride through LaPorte and St. Joseph counties on July 28 and July 29, 2009. Plaintiff performed the escort on July 28 but not on July 29. While Plaintiff's absence at the second day of the escort was being investigated as a possible rules violation, Plaintiff was ordered to undergo a second FDE in a letter from Superintendent Whitesell dated August 13, 2009. Plaintiff was again suspended from her regular duties pending the FDE and assigned administrative duties, this time at the Indiana Toll Road District instead of at her usual post at the Bremen District. Plaintiff asserts that she had no actual duties while assigned to the Toll Road District and that she was not allowed to use sick days to avoid the assignment as she requested.

In the report from Plaintiff's second FDE dated September 9, 2009, the examining psychologist concluded that Plaintiff was fit for duty but recommended that she continue counseling. Plaintiff remained on administrative duty until September 22, 2009, when she was informed in a memorandum from Superintendent Whitesell that she was to return to her regular duties at the Bremen District. Plaintiff's temporary reassignment to administrative duties at the Indiana Toll Road post pending the second FDE did not result in any lost wages.

Plaintiff made a report of sex discrimination with Human Relations on September 18, 2009. She then contacted the EEOC and on September 22, 2009, signed her first formal Charge of Discrimination.

On September 24, 2009, Plaintiff was formally charged with a violation of personnel rules for failing to report for the second day of the charity bicycle ride and for being discourteous to another officer on the first day of the ride. On October 1, 2009, Plaintiff attended a hearing on those charges. On October 6, 2009, Superintendent Whitesell concluded that the evidence supported the

charges and ordered Plaintiff suspended for ten days without pay.

On December 3, 2010, Plaintiff received a written employee counseling form for alleged inappropriate communication with a dispatcher over the police mobile data terminal system on October 28, 2010. Plaintiff wrote "Are you allergic to phones?" after the dispatcher complained she had been unable to contact Plaintiff over the police radio. On December 3, 2010, Plaintiff filed her second Charge of Discrimination with the EEOC, claiming the counseling form was retaliation for filing her EEOC Charge and for complaining on October 28, 2010, that another officer embarrassed her over the police radio by accusing her of attempting to shirk her duties related to a car accident on that date.

## ANALYSIS

Defendant moves for summary judgment on Plaintiff's claims for intentional discrimination and retaliation. The Court considers each claim in turn.

### A. Disparate Treatment

Plaintiff's first claim of gender discrimination is grounded in a disparate treatment theory. Disparate treatment "is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their . . . sex." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n. 15 (1977). "Proof of discriminatory motive is critical" to such a claim. *Id.* Plaintiff's only specific allegation that Defendant treated her—and female officers in general—differently from her male counterparts was with regard to FDE referrals. Amended Compl. ¶17; Resp. 20-21. Accordingly, for purposes of Plaintiff's disparate treatment claim, the Court will only look at the circumstances surrounding the two FDEs.

Defendant asserts that Plaintiff's supervisors began to notice problems with her job

5

performance and conduct in January 2009, including being paranoid, breaking down crying when asked about her service in Iraq, being argumentative and insubordinate, and receiving four conduct complaints by citizens within a three-month period. Defendant asserts that these problems were the basis of the recommendation that Plaintiff undergo the first of two mental health FDEs. Plaintiff agrees that her problems with the ISP began after she returned from Iraq, but she asserts that several of the purported reasons for the referral were inaccurate, unsubstantiated, or blown out of proportion. She argues the real reason for her FDE referral was discrimination.

Defendant does not explain in its brief what specific actions or events led to the second FDE referral. However, Plaintiff refers to a memo she received in discovery dated the day before Plaintiff was ordered to undergo her second FDE in which two troopers had written to Plaintiff's immediate supervisor that Plaintiff had difficultly following instructions at firearms training. In an undated postscript on that memo, Plaintiff's supervisor noted his concern with Plaintiff's well-being. Because the FDE referral was made only a day after that memo, Plaintiff speculates in her brief that Defendant either shortcut the procedures by which a request for an FDE evaluation is supposed to progress through the chain of command before an a referral is actually made or that the FDE referral was for other reasons. The report of the investigation into Plaintiff's failure to report for the second day of the bicycle escort assignment was not released until August 28, 2009, fifteen days after the second FDE referral. Although those are her speculations, Plaintiff asserts that she was not told the reason for the second FDE.

Plaintiff supports her claim of discrimination based on gender with statistical data she argues show that female troopers were disproportionately referred for FDEs. Based on data provided to Plaintiff by Defendant, women compromised less than 6% of ISP employees ranked trooper or

6

above during the years 2006 through 2011. During that same time period, 47 individual troopers—41 male (87.2%) and 6 female (12.8%)—were referred for FDEs. Some troopers were referred for more than one FDE, resulting in a total of 65 referrals, 54 of which were for male troopers (83%) and 11 of which were for female troopers (17%). Those troopers referred for multiple FDEs were 33.3% female and 66.7% male. Political scientist Larry Bass, PhD, expert witness for the Plaintiff, testified that these numbers show that female troopers were referred for FDEs two to three as often as male troopers, a disparity he testified is statistically significant. Defendant's expert witness, statistician Dr. James Burdeane Orris, agreed that the disparity is statistically significant. The experts disagree, however, on whether the statistics are useful in determining whether the statistical disparity in FDE referrals was the result of intentional gender discrimination or some other factor, such as a higher rate of anxiety and mood disorders among women in general.

Plaintiff also claims that Defendant's standard operating procedures provide no objective standards to determine whether an FDE should be ordered. She argues that without objective standards, command-level officers—who are overwhelmingly male—are more likely to accuse a female trooper who becomes emotional or argues with an superior of "acting hysterically" than a male trooper exhibiting the same behavior, thereby resulting in female troopers being disproportionately referred for FDEs.

Defendant argues that Plaintiff's statistical evidence alone is insufficient to allow her to use the direct method of proving discriminatory intent and that she must, therefore, proceed using the indirect method adapted from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). It then argues that Plaintiff has failed to present evidence to satisfy the elements of a prima facie case under

the indirect method. Plaintiff responds that her statistical evidence, coupled with suspicious timing and with specific examples of differences in the use of FDEs between male and female officers, provides the evidence necessary to proceed using the direct method.

Although the Seventh Circuit Court of Appeals has recently "suggested we move away from the 'ossified direct/indirect paradigm in favor of a simple analysis of whether a reasonable jury could infer prohibited discrimination' and an adverse employment action based on that discrimination," courts have generally "continued to look at the factors embodied in the traditional tests to determine whether plaintiff has succeeded in creating a genuine issue of material fact." *Chaib v. Indiana*, 744 F.3d 974, 981 (7th Cir. 2014) cert. denied, No. 13-1540, 2014 WL 2891439 (U.S. Oct. 6, 2014) (quoting *Perez v. Thorntons, Inc.*, 731 F.3d 699, 703 (7th Cir. 2013)). However, the Court need not address the dispute over which method Plaintiff should use to prove discriminatory intent because Plaintiff has failed to present any evidence that she was discriminated against "with respect to [her] compensation, terms, conditions or privileges of employment," as is required under Title VII. 42 U.S.C. § 2000e-2(a)(1); *see Herrnreiter v. Chicago Hous. Auth.*, 315 F.3d 742, 743-44 (7th Cir. 2002) ("Title VII does not forbid every act of invidious discrimination that an employer might commit against an employee; the act must be 'with respect to [the employee's] compensation, terms, conditions, or privileges of employment.'") (quoting 42 U.S.C. § 2000e-2(a)(1)). In other words, Plaintiff has failed to present any evidence that she suffered a materially adverse employment action when she was referred for the FDEs, a factor that must be present no matter the method of proof used. *Chaib*, 744 F.3d at 982 ("The requirement that a plaintiff show she suffered an adverse employment action as a result of her employer's alleged discrimination is an element of any Title VII claim, regardless of whether the claim is reviewed under the traditional direct/indirect

8

framework or the less rigid framework our cases have recently suggested.") (citing *Morgan v. SVT, LLC,* 724 F.3d 990, 995-97 (7th Cir. 2013)); *Oest v. Ill. Dept. of Corrections*, 240 F.3d 605, 612 (7th Cir. 2001) ("Only those acts resulting in adverse employment actions are cognizable under Title VII.").

To be considered materially adverse, an employment action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir.1993)). "[A]n adverse employment action need not be quantifiable in terms of pay or benefits," but "not everything that makes an employee unhappy is an actionable adverse action." *Hilt-Dyson v. City Of Chicago*, 282 F.3d 456, 465-66 (7th Cir. 2002) (quoting *Smart v. Ball St. Univ.*, 89 F.3d 437, 441 (7th Cir.1996)). Although determining whether a particular employment action is materially adverse will depend on the unique circumstances of each case, the Seventh Circuit Court of Appeals has identified three general categories of actionable, materially adverse employment actions: (1) an employee's compensation or benefits are diminished or she is fired; (2) a nominally lateral transfer or other change in her job significantly reduces her career prospects; or (3) work conditions are changed so as to subject her to "a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in [her] workplace environment." *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1116 (7th Cir. 2009) (citing *O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004)); *see also Herrnreiter*, 315 F.3d at 745 (providing that the last category includes "cases of harassment-mistreatment of an employee by coworkers or supervisors that is sufficiently severe to worsen substantially his conditions of employment as they would be perceived by a reasonable person in the position of the employee") (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 786-88 (1998); *Hilt-Dyson*, 282 F.3d at 462-63).

9

The undisputed facts show that the FDEs did not result in Plaintiff's being terminated, demoted, or losing pay. The only financial consequence of the FDEs was the cost of co-pays for the therapy sessions Plaintiff was required to attend as a result of the first FDE, and Plaintiff makes no argument that this cost constitutes an adverse employment action. Although Plaintiff testified at her deposition that she believed the FDEs could interfere with her chances for promotion, she also testified that she is not interested in a promotion because she likes her current position. Therefore, she cannot and has not argued that she will suffer any future financial repercussions. Even if she had planned to seek a promotion, Plaintiff's speculation at her deposition that being required to undergo an FDE could hinder a trooper's ability to be promoted is insufficient without other evidence to establish a genuine issue of material fact to defeat summary judgment. *See O'Neal*, 392 F.3d at 912 (stating that without any objective evidence, police officer's speculation that she was less likely to be promoted because of a lateral transfer from administrative sergeant to beat sergeant was "insufficient to defeat summary judgment"). While Defendant does not contest Plaintiff's assertion that she had no real responsibilities while on administrative duty at the Toll Road District, it argues that any decrease in responsibilities pending the FDEs does not constitute a materially adverse employment action because it was only temporary, and Plaintiff offers no response to this argument. Plaintiff also believes that being stripped of her police powers and assigned to administrative duties caused her humiliation and embarrassment and that her co-workers treat her differently because of the FDEs because they worry they will be disfavored if they are friendly with her. However, damage to a reputation generally does not constitute an adverse employment action. *See Spring v. Sheboygan Area Sch. Dist.*, 865 F.2d 883, 886 (7th Cir. 1989) (change in public perception is not adverse employment action); *O'Neal v. City of Chicago*, 317 F. Supp. 2d 823, 828

(N.D. Ill. 2004) ("[Plaintiff] cites no authority—and this Court finds no controlling authority—for the proposition that a 'tarnished reputation' is sufficient for establishing an adverse employment action."); *Stewart v. Evans*, 275 F.3d 1126, 1136 (D.C. Cir. 2002) ("[P]ublic humiliation or loss of reputation does not constitute an adverse employment action under Title VII"); *see also Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996) ("[N]ot everything that makes an employee unhappy is an actionable adverse action."). Accordingly, the Court finds that Plaintiff's being required to undergo an FDE did not result in any loss in pay or any future financial impact, and therefore did not, in itself, constitute a materially adverse employment action. *See Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 787 (7th Cir. 2007) (agreeing with the Fourth and Fifth Circuit Courts of Appeal that being placed on "paid administrative leave pending the results of [a] fitness-for-duty psychological examination [does] not constitute a *materially* adverse action").

Although being required to undergo the FDEs did not constitute an adverse employment action under the first and second categories enunciated by the Seventh Circuit Court of Appeals, Plaintiff makes other arguments that could be construed as alleging that the FDEs contributed to a negative alteration in her workplace environment that rose to the level of an adverse employment action. Those arguments appear to be made in support of her hostile work environment claim, not her disparate treatment claim. However, as some of her arguments relate to the disparate use of FDEs, the Court will address them here. Plaintiff argues that even if being required to undergo an FDE is not generally itself a material adverse employment action, it becomes one when the FDE referral process is administered in a gender-biased fashion. Specifically, Plaintiff argues that her sensing that she was being treated differently and knowing of "several male troopers accused of far more serious offenses then [sic] her who were never required to undergo a fitness for duty

11

evaluation" subjected her to an abusive work environment. Resp. 24-25. However, even if the evidence cited by Plaintiff establishes that female officers were treated differently in terms of FDE referrals because of their sex and that Plaintiff was aware of that disparity,[1] Plaintiff offers no case law to support her argument that simply knowing she was being treated differently because of her sex created a "a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in [her] workplace environment." *Nagle*, 554 F.3d at 1116 (7th Cir. 2009) (defining one category of adverse employment action by those terms). Plaintiff states in conclusory fashion that "it is impossible to conceive that a reasonable person would not conclude that considering all of the circumstances, [Plaintiff's] workplace was not abusive." Resp. 24. However, she offers no argument on this point. Accordingly, even viewing the facts in the light most favorable to Plaintiff, she cannot sustain her burden of showing that she suffered from a materially adverse employment action related to the FDEs. *See Chaib*, 744 F.3d at 987 (concluding that a plaintiff who failed to provide argument on how an action affected her did not carry her burden to show that action was materially adverse).

To the extent Plaintiff argues that the FDE referrals were just two in a series of harassing actions that collectively constituted a single adverse employment action, Plaintiff's argument on this point offers support to her hostile work environment claim, which the Court addresses later. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 103 (2002) ("A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'").

---

[1] Defendant moves that the affidavit Plaintiff cites to support her assertion that she knew male troopers were being treated differently be stricken because "they contain inadmissible hearsay and make conclusory allegations and statements of which she has no personal knowledge." Reply 4. However, because the Court finds that Plaintiff's asserted facts—even if true—do not support finding that an adverse employment action was committed, the Court does not here rule on whether the evidence in the affidavit is admissible.

12

Because there are no triable issues of fact that could result in a reasonable jury finding that Plaintiff suffered a materially adverse employment action as a result of her two FDE referrals, Defendant is entitled to summary judgment on Plaintiff's disparate treatment claim.

**B.     Retaliation**

Plaintiff also asserts a claim for retaliation under Title VII.     She claims that the December 3, 2010, employee counseling form for an alleged inappropriate communication with a dispatcher over the police mobile data terminal system was issued in retaliation for her filing her first EEOC Charge over a year earlier and for complaining about a male trooper's radio communication the same day—communication Plaintiff characterizes as far more inappropriate than her own behavior but for which the male officer received the same discipline.

Title VII prohibits employers from taking adverse employment actions against an employee in retaliation for the employee's complaining about prohibited discrimination. *Chaib*, 744 F.3d at 986 (citing *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 404 (7th Cir. 2007)). The standard to show an adverse employment action is, however, less than is required for a disparate treatment claim; a plaintiff need only show that "the employer's action would cause a 'reasonable' worker to be dissuaded from making or supporting a charge of discrimination." *Chaib*, 744 F.3d at 987 (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

Defendant argues that the letter of counseling—which resulted in no suspension, demotion, or loss of pay—received over a year after the EEOC Charge was filed does not by itself constitute an adverse employment action because no reasonable person would feel dissuaded from maintaining an employee discrimination claim because of it. Plaintiff responds in conclusory fashion that "the circumstances surrounding the write-up—that [Plaintiff] complained about a male officer's conduct

13

and was herself cited for . . . a similar offense despite the lack of objectionable language . . . , when coupled with all of the other evidence of record, [are] more than sufficient to survive the motion for summary judgment." Resp. 25. However, "[e]ven under the more generous standard that governs retaliation claims," a reprimand "without more" is not an adverse employment action. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 902 (7th Cir.2003). Plaintiff has "made no effort to show how it affected [her] employment from that time forward." *Id.* She has also made no argument explaining how the letter of counseling would dissuade a reasonable worker from complaining about discrimination. Accordingly, the Court finds that even viewing the facts in a light most favorable to the non-moving plaintiff, she cannot meet her burden of proving her retaliation claim. *See Celotex,* 477 U.S. at 322 ("Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."); *Chaib*, 744 F.3d at 987 (concluding that the plaintiff had "not carried her burden to show that a reasonable jury could find that the reprimand was materially adverse" because she had not "made any argument explaining how a reasonable worker would be dissuaded by the reprimand from complaining about discrimination"). Therefore, Defendant is entitled to summary judgment on the retaliation claim.

**C.     Hostile Work Environment**

In the section of Plaintiff's Amended Complaint titled "Factual Allegations," Plaintiff alleges: "As a direct and proximate result of the defendant's actions as alleged above, plaintiff has been subjected to a hostile work environment which has caused the plaintiff to suffer mental and emotional distress, embarrassment and trauma." Amended Compl. ¶18. Plaintiff does not, however, re-state her hostile work environment claim in the section of the Complaint titled "Claims." After

14

Plaintiff noted in a footnote of her response brief that Defendant had not address the hostile work environment claim, Defendant argued for summary judgment on the hostile work environment claim in its reply brief—although it protested that Plaintiff had not included the claim in the "Claims" section.

Although the hostile work environment claim was not neatly included in the "Claims" section of the Complaint, it was written in clear terms and included in manner that should have given Defendant notice of the claim. *Cf. Wislocki-Goin v. Mears*, 831 F.2d 1374, 1381 (7th Cir. 1987) (determining that a plaintiff waived a claim by only including an "oblique reference" to it in an attachment to a complaint because "[i]t must be remembered that the principal function of the complaint is to give the court and the opposing party sufficient notice of the allegation to which a response must be made.") Accordingly, Defendant cannot be excused from addressing it.

Additionally, arguments raised for the first time in a reply brief are generally deemed waived. *Holman v. Indiana*, 211 F.3d 399, 405 n.5 (7th Cir. 2000); *see also Edwards v. Honeywell, Inc.*, 960 F.2d 673 (7th Cir. 1992) (finding that the district court was precluded from granting summary judgment on a ground raised only in a reply brief because the plaintiff had an inadequate opportunity to respond); *McKay v. Town and Country Cadillac, Inc.*, 97 C 2102, 2002 WL 664024, *8 2002 U.S. Dist. LEXIS 7724, *26 n. 5 (N.D. Ill. Apr. 23, 2002) (refusing to rule on an issue raised for the first time by the defendant in the reply brief when the issue was anticipated in the response brief by overly-cautious plaintiff); *cf. Wagner v. Magellan Health Servs., Inc.*, 121 F. Supp. 2d 673, 680 (N.D. Ill. 2000) (addressing issue raised for first time by defendant in reply brief because issue was fully briefed by plaintiff in response brief), *and Kronstedt v. Equifax*, No. 01-C-0052-C, 2001 WL 34124783, at *19 (W.D. Wis. Jan. 25, 2001) (same). Although Plaintiff discusses

her hostile work environment claim in her response brief, Defendant's reply raises arguments that are not addressed by Plaintiff. Because Plaintiff has not had the opportunity to fully address Defendant's arguments about her hostile work environment claim, neither will the Court address them. The Court will not grant summary judgment in favor of Defendant on Plaintiff's claim that she was subjected to a hostile work environment in violation of Title VII.

## CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Judge Moody **GRANT in part and DENY in part** the Motion for Summary Judgment [DE 38]. The Court **RECOMMENDS** that Judge Moody **GRANT** summary judgment in favor of Defendant on Plaintiff's disparate treatment and retaliation claims but that Judge Moody **DENY** summary judgment on Plaintiff's hostile work environment claim.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

SO ORDERED this 3rd day of November, 2014.

s/ John E. Martin  
MAGISTRATE JUDGE JOHN E. MARTIN  
UNITED STATE DISTRICT COURT

cc: All counsel of record