UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JUDITH A. KUBSCH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 2:10 CV 495 |
| | ) |
| INDIANA STATE POLICE, | ) |
| | ) |
| Defendant. | ) |

## OPINION and ORDER

This matter is before the court on a motion for summary judgment (DE # 36), filed by defendant Indiana State Police on February 15, 2013. On May 19, 2014, this court referred this motion to Magistrate Judge John E. Martin for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (DE # 51.). On November 3, 2014, Magistrate Judge Martin filed his report and recommendation. (DE # 53.) Plaintiff timely filed an objection to the report and recommendation (DE # 59); defendant has indicated that it has no objections (DE # 58). The report and recommendation and subsequent objection are now ripe for ruling.

### I.     BACKGROUND

Because neither party disputes the material facts of this case as presented by Magistrate Judge Martin in his November 3, 2014, order, the court briefly recites the relevant facts, as Magistrate Judge Martin stated them, below.

Plaintiff has been employed as a trooper with defendant ISP since December 20, 1993, except for interruptions for military service. After plaintiff returned from Iraq in 2008, she was required to undergo two mental health fitness for duty evaluations

("FDEs"). While the first FDE was pending, plaintiff was removed from her regular duties and assigned to administrative duties. Reassignment to administrative duties involved the suspension of law enforcement authority with the surrender of badge, identification card, and weapon. The psychologist who performed the first FDE recommended that plaintiff attend sixteen counseling sessions but that she be allowed to return to her regular duties after completing four of them. Rather than report for administrative duties during the FDE process and mandatory counseling, plaintiff chose to use some of her accumulated sick days. Plaintiff returned to regular duty after completing four counseling sessions. Plaintiff's reassignment to administrative duties pending the first FDE and during her first four counseling sessions did not result in any lost wages. Her only financial loss related to the FDE was the payment of insurance co-pays for the treatment that was mandated by the evaluating psychologist.

Later, plaintiff was informed that she had been assigned to escort bicyclists on a two-day charity ride. Plaintiff performed the first day of the escort but not the second. While plaintiff's absence from the second day of the escort was being investigated as a possible rules violation, plaintiff was ordered to undergo a second FDE. She was again suspended from her regular duties and assigned administrative duties, this time at the Indiana Toll Road District instead of at her usual post at the Bremen District. Plaintiff asserts that she had no actual duties while assigned to the Toll Road District and that she was not allowed to use sick days to avoid the assignment as she requested. The examining psychologist concluded that plaintiff was fit for duty but recommended that

she continue counseling. Plaintiff's second temporary reassignment did not result in any lost wages.

Plaintiff made a report of sex discrimination with human relations on September 18, 2009. She then contacted the EEOC and on September 22, 2009, signed her first formal charge of discrimination. She alleged that she had been subjected to a hostile work environment, "workplace harassment, exclusion, intimidation, and unwarranted scrutiny of [her] job performance," including being required to undergo two mental health FDEs. (DE # 1, Ex. 1.) On September 24, 2009, plaintiff was formally charged with a violation of personnel rules for failing to report for the second day of the charity bicycle ride and for being discourteous to another officer on the first day of the ride. On October 1, 2009, plaintiff attended a hearing on those charges. On October 6, 2009, the superintendent concluded that the evidence supported the charges and ordered plaintiff suspended for ten days without pay.

On December 3, 2010, plaintiff received a written employee counseling form for alleged inappropriate communication with a dispatcher over the police mobile data terminal system on October 28, 2010. (Plaintiff had written "Are you allergic to phones?" after the dispatcher complained she had been unable to contact plaintiff over the police radio.) On December 3, 2010, plaintiff filed a second charge of discrimination with the EEOC, claiming the counseling form was retaliation for filing her EEOC charge and for complaining on October 28, 2010, that another officer embarrassed her over the

police radio by accusing her of attempting to shirk her duties related to a car accident on that date.

After receiving right to sue letters for both charges, plaintiff filed a complaint (and later, an amended complaint) in this court, including claims for hostile work environment, disparate treatment, and retaliation in violation of Title VII of the Civil Rights Act of 1964. Defendant filed a motion for summary judgment, arguing that it is entitled to summary judgment on plaintiff's disparate treatment and retaliation claims. As explained above, this court referred that motion to Magistrate Judge Martin. After Magistrate Judge Martin issued his report and recommendation, plaintiff filed an objection, which the court considers below.

## III. LEGAL STANDARD

In reviewing a magistrate judge's report and recommendation, a district judge must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." FED. R. CIV. P. 72(a). In this case, Magistrate Judge Martin's order addressed a motion made pursuant to FEDERAL RULE OF CIVIL PROCEDURE 56. That rule requires that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). As explained by the Supreme Court of the United States, RULE 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear

4

the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)). "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted). In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50.

### III. DISCUSSION

Plaintiff's "objection" to Magistrate Judge Martin's report and recommendation is actually a potential objection conditioned on the answer she expects to receive from this court on the following question: "Does the ISP's standardless practice of referring female officers for psychological fitness for duty evaluations at a rate of 2 to 3 times that of their male counterparts violate Title VII of the Civil Rights Act of 1963, regardless of whether the plaintiff suffered any pecuniary loss as a result of being referred twice for such evaluations?" If the answer is yes, then plaintiff claims she has no objections to the

5

magistrate judge's report and recommendation. If the answer is "no," then plaintiff has an objection to make. Plaintiff's question was not previously presented to the court, and was not considered by the magistrate. Nor has defendant been afforded an opportunity to brief the issue. Plaintiff essentially seeks an advisory opinion without going through the appropriate procedural channels. Such a maneuver is improper, and the court will not entertain it.

Although the court will not consider plaintiff's proposed question, it will consider the objection plaintiff claims she would make to the report and recommendation if the court's answer to her question were "no." Specifically, plaintiff argues that Magistrate Judge Martin incorrectly determined that plaintiff's disparate impact and retaliation claims failed because plaintiff could not demonstrate the existence of an "adverse employment action," a necessary element of both claims regardless of the method of proof employed.

The parties do not dispute the controlling law regarding adverse employment actions for disparate impact claims. As Magistrate Judge Martin explained, "[o]nly those acts resulting in adverse employment actions" present cognizable claims. *Oest v. Ill. Dept. of Corrections*, 240 F.3d 605, 612 (7th Cir. 2001) To be considered materially adverse, an employment action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir.1993). "[A]n adverse employment action need not be quantifiable in terms of pay or benefits," but "not everything that makes an employee unhappy is an

6

actionable adverse action." *Hilt-Dyson v. City Of Chicago*, 282 F.3d 456, 465-66 (7th Cir. 2002) (quoting *Smart v. Ball St. Univ.*, 89 F.3d 437, 441 (7th Cir. 1996)). Whether a particular employment action is materially adverse will depend on the unique circumstances of each case, but the Seventh Circuit Court of Appeals has identified three general categories of actionable, materially adverse employment actions: (1) an employee's compensation or benefits are diminished or she is fired; (2) a nominally lateral transfer or other change in her job significantly reduces her career prospects; or (3) work conditions are changed so as to subject her to "a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in [her] workplace environment." *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1116 (7th Cir. 2009) (citing *O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004)).

In this case, plaintiff argues (somewhat nebulously) that the standard for determining what constitutes an "adverse employment action" is a flexible one, and that this flexibility renders the concept of "adverse employment actions" broad enough to encompass the facts of plaintiff's case. However, even a flexible standard has its limits. An analysis of the relevant law and Magistrate Judge Martin's recommendation demonstrates that Magistrate Judge Martin correctly assessed the undisputed facts and determined that the FDEs did not result in plaintiff being terminated, demoted, or losing pay. Indeed, the only financial consequence of the FDEs was the cost of co-pays for therapy sessions, and plaintiff did not argue that this cost constituted an adverse employment action. Further, Magistarte Judge Martin correctly surmised that any

7

argument by plaintiff that she might suffer future financial consequences in the form of the loss of a future promotion was negated by her testimony that she was not interested in a promotion because she liked her current position.

Magistrate Judge Martin also properly rejected plaintiff's argument that her temporary decrease in responsibilities while on administrative duty at the Toll Road District constituted an adverse employment action, *see Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 787 (7th Cir. 2007) (agreeing with the Fourth and Fifth Circuits that being placed on "paid administrative leave pending the results of [a] fitness for-duty psychological examination [does] not constitute a *materially* adverse action"), as well as her argument that she experienced an adverse employment action when she was humiliated and embarrassed, *see Spring v. Sheboygan Area Sch. Dist.*, 865 F.2d 883, 886 (7th Cir. 1989) (change in public perception is not adverse employment action); *O'Neal v. City of Chicago*, 317 F. Supp. 2d 823, 828 (N.D. Ill. 2004) ("[Plaintiff] cites no authority—and this Court finds no controlling authority—for the proposition that a 'tarnished reputation' is sufficient for establishing an adverse employment action."); *Stewart v. Evans*, 275 F.3d 1126, 1136 (D.C. Cir. 2002) ("[P]ublic humiliation or loss of reputation does not constitute an adverse employment action under Title VII"); *see also Smart v.Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996) ("[N]ot everything that makes an employee unhappy is an actionable adverse action.").

Plaintiff's retaliation claim warrants a separate analysis. Under *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 61 (2006), the term "adverse employment action" is

8

more broadly defined in a retaliation action than in a disparate treatment action. The Supreme Court reasoned that while the terms "hire," "discharge," "compensation, terms, conditions, or privileges of employment," "employment opportunities," and "status as an employee" are in Title VII's anti-discrimination provision, the anti-retaliation provision has no such limiting words. *Id.* at 62-63. The Court surmised that the anti-discrimination provision promotes a workplace where individuals are not discriminated against because of their status, while the goal of the anti-retaliation provision is to prevent an employer from interfering with an employee's efforts to secure or advance enforcement of Title VII's basic guarantees. *Id.* Accordingly, the Court held that, in the context of a Title VII retaliation claim, an employee need not show that the action affected the terms and conditions of employment, but rather she must simply show that a reasonable employee would have found the employer's challenged action "materially adverse . . . which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (internal quotation marks omitted).

In this case, plaintiff's retaliation claim is premised on her allegation that she received a counseling form after filing an EEOC charge. Magistrate Judge Martin correctly determined that such a factual scenario does not meet even the broader definition of "adverse employment action" in the retaliation context. *Whittaker v. N. Illinois Univ.*, 424 F.3d 640, 648 (7th Cir. 2005) (written reprimand does not qualify as adverse employment action in retaliation context); *Johnson v. Cambridge Indus., Inc.*, 325

9

F.3d 892, 902 (7th Cir. 2003) ("Even under the more generous standard that governs retaliation claims," a reprimand "without more" is not an adverse employment action).

In short, Magistrate Judge Martin correctly found that plaintiff failed to create issues of fact regarding the existence of an adverse employment action necessary to support her disparate treatment and retaliation claims. Accordingly, his recommendation that this court grant summary judgment for defendant on those claims was appropriate. *Celotex,* 477 U.S. at 322 ("Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). Plaintiff's objection to Magistrate Judge Martin's report and recommendation is overruled.

IV.     CONCLUSION

For the foregoing reasons, plaintiff's objection to Magistrate Judge Martin's Report and Recommendation (DE # 59) is **OVERRULED**. The court **ADOPTS** Magistrate Judge Martin's Report and Recommendation (DE # 53), **GRANTS** defendant's motion for summary judgment (DE # 36) as to plaintiff's disparate treatment and retaliation claims, and **DENIES** the same motion as to plaintiff's hostile work environment claim. This case will be set for trial under separate order.

**SO ORDERED.**

Date: January 8, 2015

s/James T. Moody_____
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT